IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**PAUL BORDE and**
**FOREST BOSTICK,**

      **Petitioners,**

v.                                                 **No. CIV 09-1185 WDS/GBW**

**BOARD OF COUNTY COMMISSIONERS**
**OF LUNA COUNTY, NEW MEXICO, and**
**JOHN SUTHERLAND, R. JAVIER DIAZ**
**and FRED WILLIAMS, in their individual**
**capacities,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendants Board of County Commissioners of Luna County, New Mexico, and John Sutherland, R. Javier Diaz and Fred Williams' ("Defendants") Motion for Judgment on the Pleadings ["Motion"] on Count IV of Plaintiffs' Complaint filed July 13, 2010, [Doc. 40], Plaintiffs Paul Borde and Forrest Bostick's ("Plaintiffs") Response filed August 9, 2010 [Doc. 49], and Defendants' Reply filed August 14, 2010 [Doc. 52]. A hearing was held on August 4, 2011 on Defendants' Motion. Having considered the Motion, the Response, the Reply, the hearing, and the applicable law, this Court finds that the Motion is well taken, and it will be granted.

**BACKGROUND**

      On February 26, 2008, Luna County and Paul Borde ("Borde") entered into an employment agreement that provided that Borde would be employed as Public Works Director for a term of three years. Complaint at ¶13. On February 26, 2008, Luna County and Forest Bostick ("Bostick") entered

into an employment agreement that provided that Bostick would be employed as Risk Manager/Emergency Management Coordinator for a term of three years. *Id.* at ¶15. Bostick retired from Luna County on July 31, 2008. *Id.* at ¶16. He then contracted with Luna County as a County Jail Administrator consultant from August 1, 2008 until November 1, 2008, at which time he returned to full employment under the same contractual terms as he had prior to his retirement. *Id*. The registered voters of Luna County did not vote on these two employment contracts. [Doc. 49, pp. 3-4].

Plaintiffs' contracts provide that while Luna County could terminate Plaintiffs at any time during the contract, severance pay would be owed unless the employee was terminated as a result of the conviction of a felony. *Id.* at ¶18. Neither Plaintiff was convicted of a felony. *Id.* Following a meeting of the County Commissioners, on June 23, 2009, John Sutherland ("Sutherland") told the Plaintiffs that their contracts had been terminated, that their services were no longer needed, and that their contracts were not going to be honored. *Id.* at ¶24.

Section 1 of Plaintiffs' contracts provides:

> **1.  Term of Employment.**  The term of this agreement shall be three (3) years commencing on February 26, 2008.  The contract shall automatically renew for an additional three (3) years unless notice of non-renewal is provided by either party at least 90 days prior to that expiration.  This term is subject to the provisions of Section 10 hereof.

[Doc. 40-2, p. 1]. Section 5B of Plaintiffs' contracts provides:

> **5.  Employment and Benefits.**
>
> B. ... In the event of termination during the first year of the contract term, the Employee shall receive the balance of the contract compensation amount due plus severance pay equal to six (6) months base pay; if terminated during the second year, the Employee shall receive the balance of the contract compensation due plus severance pay equal to twelve (12) months of base pay; if terminated in the third year, the Employee shall receive the balance of the contract compensation due plus severance pay equal to eighteen (18) months of base pay. [Doc. 40-1, p. 2].

2

Plaintiffs were terminated during the second year of the contract term, but they were not paid the compensation and severance set forth above. Complaint at ¶27. Plaintiffs' contracts further provide that in the event of termination or resignation, Plaintiffs would each be entitled to five (5) weeks of paid time off (PTO) per year. *Id*. at ¶28. Plaintiffs were not paid for PTO. *Id.* at ¶29.

Plaintiffs' contracts also provide that if the contracts were not renewed at the end of the contract term, the Plaintiffs "shall receive severance pay equal to eighteen (18) months of current base pay." [Doc. 40-1, p. 9].

Section 10 of Plaintiffs' contracts provides:

> 10. **Appropriation of Funds**: In accordance with Section 6-6-11 NMSA 1978, the County shall, in the current fiscal year, budget funds to pay for all subsequent years of the contract term. If the contract is renewed for an additional three (3) year term as specified in paragraph 1 hereof, the County shall budget funds to pay for all years of the contract in the then current fiscal year. Any increase in the severance amount arising from cost of living or other changes shall be budgeted and allocated in the same year of any such pay increase. [Doc. 40-1, p. 11].

Count IV of Plaintiffs' Complaint, which is the subject of Defendants' Motion, alleges breach of the employment contracts between Plaintiffs and Luna County. [Doc. 1].

## CLAIMS

Defendants claim that Count IV of Plaintiffs' Complaint alleging breach of contract must be dismissed because Plaintiffs' contracts violate Article IX, Section 10 of the New Mexico Constitution. [Doc. 40]. Defendants allege that the contracts are unconstitutional because they create unconstitutional debts and, therefore, the contracts are null and void.[1] *Id*. Plaintiffs claim that the contracts are not debt because the County budgeted for all three years of the contract term in

---

[1] Defendants also claim that the contracts violate the prohibition against binding successor boards. Because this Court finds that the contracts violate the New Mexico Constitution, it is unnecessary for the Court to reach this issue.

2008, the then current fiscal year. [Doc. 49].

## STANDARD OF REVIEW

A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. *Ramirez v. Wal-Mart Stores, Inc*., 192 F.R.D. 303, 304 (D.N.M. 2000). A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enterprises, Inc. v. Am. Cas. Co. Of Reading, Pa.,* 442 F.3d 1239, 1244 (10th Cir. 2006) (citation omitted). A party may move for judgment on the pleadings if no material facts are in dispute, and the dispute can be resolved on the pleadings and on any facts of which the Court can take judicial notice. *Ramirez v. Wal-Mart Stores, Inc*., 192 F.R.D. at 304 (citing Fed.R.Civ.P. 12(c)).

The same standards that govern a motion to dismiss under Rule 12(b)(6) also govern a motion for judgment on the pleadings under Rule 12(c). *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under Rule 12(b)(6), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, notwithstanding the usual Rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). If a document is not incorporated by reference or attached to the complaint, but is "referred to in the complaint and is central to the plaintiff's claim, the defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Assoc. Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997). This exception does not

convert a motion to dismiss into a motion for summary judgment. *See generally id.*

In this case, copies of the relevant contracts were not attached to the Complaint. However, Defendants submitted copies of the contracts as attachments to their Motion. Because the contracts are referred to in the Complaint, and, in fact, form the basis of Plaintiffs' breach of contract claim, and because Plaintiffs do not dispute the authenticity of these documents, this Court will consider the contracts in its determination of Defendants' Motion. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d at 1384.

## ANALYSIS

The issue before the Court is whether the particular employments contracts entered into between Plaintiffs and Luna County create a debt which is prohibited by Article IX, Section 10 of the New Mexico Constitution. Article IX, Section 10 provides:

No county shall borrow money except for the following purposes:

A. erecting, remodeling and making additions to necessary public buildings;
B. constructing or repairing public roads and bridges and purchasing capital equipment for such projects;
C. constructing or acquiring a system for supplying water, including the acquisition of water and water rights, necessary real estate or rights-of-way and easements;
D. constructing or acquiring a sewer system, including the necessary real estate or rights-of-way and easements;
E. constructing an airport or sanitary landfill, including the necessary real estate;
F. acquiring necessary real estate for open space, open space trails and related areas and facilities; or
G. the purchase of books and other library resources for libraries in the county.

> In such cases, indebtedness shall be incurred only after the proposition to create such debt has been submitted to the registered voters of the county and approved by a majority of those voting thereon. No bonds issued for such purpose shall run for more than fifty years. Provided, however, that no money derived from general obligation bonds issued and sold hereunder shall be used for maintaining existing buildings and, if so, such bonds shall be invalid.

Defendants claim that *Hamilton v. City of Albuquerque*, 103 N.M. 226, 704 P.2d 1102 (1985)

establishes that Plaintiffs' contracts are unconstitutional. In *Hamilton*, the City contracted with Hamilton to run a motor vehicle emissions inspection program from 1983 to 1987. If at the end of each year Hamilton retained more monies than necessary to fulfill the contract price, the difference went to the City. If Hamilton retained less, however, it was to invoice the City for the difference. The contract also contained a provision that provided Hamilton with certain compensation if the City terminated the contract early. The City terminated the contract early, and Hamilton sued under the contract. The New Mexico Supreme Court held that the contract was unconstitutional under Article IX, Section 12 of the New Mexico Constitution[2] because the contract obligated the City to pay out of tax revenues beyond the current fiscal year.

Plaintiffs contend that *Hamilton* is not controlling under the facts of the present case. Plaintiffs note that New Mexico courts "have always looked at obligations beyond the current fiscal year as the key point in determining whether a constitutional debt or borrowing has occurred." [Doc. 49, p. 11]. Plaintiffs argue that the distinguishing difference between the facts in *Hamilton* and the facts in the present case is that in the present case, Section 10 of the contracts requires the County to budget for all three years of the contracts in 2008, the then current fiscal year. Plaintiffs argue that by doing so, no debt is created as no revenues beyond the current fiscal year are implicated. The Court agrees with Plaintiffs' premise that New Mexico courts have looked to obligations beyond the current fiscal year when determining whether unconstitutional debt has occurred. In this Court's

---

[2]Article IX, Section 12 provides that no city or other municipality may contract "any debt" without prior voter approval. Article IX, Section 10, which is relevant to counties, states that "No county shall borrow money...." Despite the difference in terminology, "borrowing," as used in the county's section and "debt" as used in the city's section are treated the same by New Mexico courts. *See Allstate Leasing Corp. v. Board of County Commissioners, Rio Arriba Co.*, 450 F.2d 26, 29 (10th Cir. 1971). The Court also notes that the text of Article IX, Section 10 of the New Mexico Constitution includes the words "borrow" and "indebtedness."

opinion, however, Plaintiffs' contention that their contracts ensure that no future County funds are implicated is unavailing for the reasons discussed below.

The concept of "debt" under the New Mexico Constitution is to be broadly construed. In *Montano v. Gabaldon*, the New Mexico Supreme Court stated: "What are debts? In defining these terms it has been declared that the language of the Constitution is exceedingly broad, and should not receive a narrow or strained construction...." *Montano v Gabaldon*, 108 N.M.94, 95, 766 P.2d 1328, 1329 (1989) (quoting 1 J. Dillon, Law of Municipal Corporations, §193 at 349). The Court further noted that "[I]n keeping with the intent of the framers, a broad interpretation of the debt limitation has long been favored in New Mexico." *Id*. The *Montano* Court noted that constitutional provisions like Article IX, Section 10 of the New Mexico Constitution were primarily a response to the heavy borrowing, and subsequent default, engaged in by many states prior to 1840. *Id.* (citations omitted). Applying this broad construction, the *Montano* Court found unconstitutional a 20-year lease with option to purchase even though the lease contained a provision for early termination by the County at the end of any fiscal year if the county didn't appropriate sufficient funds to pay the contractual obligations. The Court held: "We are of the opinion that once the County accepted this lease, it would be obligated to continue making rental payments in order to protect a growing equitable interest in the facility....This is the type of future economic commitment that requires voter approval." *Montano v. Gabaldon,* 108 N.M. at 96, 766 P.2d at 1330. The Court noted that "[A]n agreement that commits the county to make payments out of general revenues in future fiscal years, without voter approval, violates the New Mexico Constitution...." *Montano v. Gabaldon,* 108 N.M. at 95, 766 P.2d at 1329 (citations omitted).

In the opinion of the Court, the contracts at issue, which obligate Luna County for a minimum of three years with significant additional penalties for termination or for failure to renew,

clearly constitute a "debt" or "borrowing" under the broad interpretation of Article IX, Section 10 of the New Mexico Constitution. There is no provision in the contracts which conditions the payment of future amounts on the availability of funds. This debt obligation violates the Constitution in that under the contracts, Luna County became obligated to make future payments in future years. This is precisely what the Constitution meant to proscribe. Article IX, Section 10 clearly sets out the purposes for which the county may incur "debt" or "borrow." The list does not include employments contracts. Even if employment contracts for more than one year were sanctioned, the provision requires a vote before the debt can be incurred. It is undisputed that no vote occurred. Under the authority discussed above, these contracts are impermissible under our Constitution.

The Plaintiffs argue that they avoid the constitutional problems by virtue of the insertion of paragraph 10 in their contract. They argue that the provision in paragraph 10 required the county to budget the entire amount of the three-year contract in 2008, the then current fiscal year. Thus, they assert that the county is not incurring any debt or borrowing. Initially, in the Court's opinion, artful drafting of a public contract cannot overcome the clear intention of a constitutional provision designed to protect the taxpayers of the county from future obligations which they may not be able to pay. Here, regardless of whether the monies are truly budgeted in one year for all three years of the contracts[3], the effect is to obligate public monies to be paid in future years for future services.

---

[3] At oral argument, counsel for Plaintiffs stated that the County had appropriated funds in 2008 to pay the entire three-year cost of Plaintiffs' contracts. Section 6-6-11 of the Bateman Act reads as follows:
> It is unlawful for any board of county commissioners, municipal governing body or any local school board, for any purpose whatever to become indebted or contract any debts of any kind or nature whatsoever during any current year which, at the end of such current year, is not and cannot then be paid out of the money actually collected and belonging to that current year, and any indebtedness

That is not proper. Secondly, a plain reading of paragraph 10 discloses no provision for budgeting for the severance pay penalty should the contracts not be renewed nor does it provide for the severance amount that arises from cost of living or other changes. Indeed, paragraph 10 directs that "[a]ny increase in the severance amount arising from cost of living or other changes shall be budgeted and allocated in the same year of any such pay increase." Accordingly, the County was incurring future debt by entering into the contracts.

Finally, the contracts create impermissible debt because the onerous termination penalties in the contracts coerce Luna County to stay in the contracts. In *Montano*, the New Mexico Supreme Court found that a perceived "obligat[ion] to continue making rental payments in order to protect a growing equitable interest in the facility" was the type of future economic commitment that required voter approval. 108 N.M. at 96. Here, the severance provisions in Plaintiffs' contracts *increase* over the term of the contract, becoming most onerous in the last of the three years. In the Court's opinion this is a clear attempt to financially handcuff, and thereby control, the future decisions made by the County vis-a-vis Plaintiffs' contracts. In the Court's opinion the future economic commitment created by Plaintiffs' contracts is at least as powerful as that rejected by the New Mexico Supreme Court in *Montano*.

Additionally, although not controlling, this Court notes that in N.M. Att'y Gen. Op. No. 88-

---

    for any current year which is not paid and cannot be paid, as above provided for, is void. Any officer of any county, municipality, school district or local school board, who shall issue any certificate or other form of approval of indebtedness separate from the account filed in the first place *or who shall at any time use the fund belonging to any current year for any other purpose than paying the current expenses of that year*, or who shall violate any of the provisions of this section, is guilty of a misdemeanor. (Emphasis supplied)

The highlighted provision of the Bateman Act calls into question the legality of paying a three-year employment contract exclusively with fiscal year 2008 funds. It is not necessary for the Court to reach this issue, however, due to the conclusion that the contracts are unconstitutional.

67 (October 31, 1988), the Attorney General opined that a two-year employment contract between Dona Ana County and the County Manager was unconstitutional. The employment contract contained, *inter alia,* the following provisions: six months' notice was required by either side for nonrenewal; the County was responsible for half of the Manager's salary if it terminated the contract without cause; and the County was prohibited from hiring anyone else if it terminated the contract. The Attorney General reasoned that the contract was unconstitutional because the provisions outlined above coerced the County to continue the contract for its entire term and effectively eliminated their right to "recede without involving any financial liability in so receding." *Id.* at p. 5 (*citing State Office Bldg. Comm'n v. Trujillo*, 46 N.M. 29, 120 P.2d 434 (1941) (where the New Mexico Supreme Court found that a lease is valid if, *inter alia*, the city "may at any time recede without involving any financial liability in so receding.") Here, the terms of the contracts not only coerce Luna County to continue the contracts for the first term of three years, but impose an eighteen month severance payment for failure to renew the contract, thereby eliminating Luna County's right to recede without involving any financial liability.

## CONCLUSION

Employing the broad construction of debt required under the New Mexico Constitution, Plaintiffs' employment contracts create a financial obligation for future years, and therefore constitute debt for Luna County. Debt for the purpose of entering employment contracts is not permitted by Article IX Section 10 of the New Mexico Constitution, even with voter approval, although in this case no such approval was sought. Accordingly, Plaintiffs' contracts create an unconstitutional debt, and are, therefore, void. *See, e.g., Shoup Voting Mach. Corp. v. Bd. Of Commissioners of Bernalillo County*, 57 N.M. 196, 256 P.2d 1068, 107 (1953) (where the New Mexico Supreme Court held that a contract that called for the payment for voting machines over ten

years was void because it was unconstitutional.)

For the foregoing reasons, this Court finds that Defendants' Motion for Judgment on the Pleadings on Count IV of Plaintiffs' Complaint is hereby granted and Count IV of Plaintiffs' Complaint alleging breach of contract is hereby dismissed with prejudice.

**IS IT SO ORDERED.**

_____
**W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE**